UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ROLINDA WALLS, N.B. and A.B., :
:
                   Plaintiffs, :
: **ORDER**
              -against- : 19 Civ. 337 (RPK) (VMS)
:
THE CITY OF NEW YORK, SERGEANT :
DAVID GRIECO, POLICE OFFICER :
MICHAEL WALLACE, POLICE OFFICER :
VINCENT GAMBINO, POLICE OFFICER :
JASON GAMMELLO, POLICE OFFICER :
FRANK RYAN, POLICE OFFICER KASEY :
WALLACE, POLICE OFFICER ELIOT :
BELILOS and POLICE OFFICERS JOHN AND :
JANE DOE #1-20, :
:
                  Defendants. :
------------------------------------------------------------ x

**Vera M. Scanlon, United States Magistrate Judge:**

      Plaintiff Rolinda Walls, individually and as mother and natural guardian of minor Plaintiffs N.B. and A.B. ("Plaintiffs"), brings this action against Defendants Sergeant David Grieco, Police Officer Michael Wallace, Police Officer Vincent Gambino, Police Officer Jason Gammello, Police Officer Frank Ryan, Police Officer Kasey Wallace, Police Officer Eliot Belilos and Police Officers John and Jane Doe #1-20 ("Defendant Officers") pursuant to 42 U.S.C. § 1983 alleging direct and failure-to-intervene violations of their rights to be free from false arrest, malicious prosecution and fabrication of evidence under the United States Constitution and related supplemental state causes of action. See Second Amended Complaint ("SAC"), ECF No. 25. Plaintiffs also bring supplemental causes of actions under New York law

against Defendant City of New York for negligent hiring, retention, training and supervision of its officers.  See id.[1]

Before the Court is Plaintiffs' motion to compel Defendants to produce certain discovery without redactions.  See ECF No. 34.  For the following reasons, the motion is granted.

### I.    Plaintiffs' Allegations

Plaintiffs allege that on October 21, 2017, Defendant Officers forcibly entered, occupied and searched their home without their consent or constitutional privilege.  See SAC ¶¶ 17-24. Plaintiffs claim that the contested occupation and search of their home lasted for approximately sixteen hours, during which time Defendant Officers unlawfully detained them.  See id.  Plaintiff Walls further alleges that she was issued a summons for possession of a marijuana cigarette without probable cause during the incident and that when she later appeared in court to answer the charge, she learned that it had been dismissed because a sufficient accusatory instrument had not been filed.  See id. ¶¶ 24-25.

### II.   Procedural History And Plaintiffs' Motion To Compel Challenging Defendants' Redaction Of Certain Entries On Defendant Officers' CCRB, IAB and CPI Summaries

In January 2019, Plaintiffs commenced their action.  See ECF No. 1.  Plaintiffs subsequently amended their complaint, see ECF Nos. 16, 25, and Defendants answered the operative SAC, see ECF No. 27.  The parties are presently performing discovery.

In discovery, Plaintiffs requested each Defendant Officer's Civilian Complaint Review Board ("CCRB") history, New York Police Department Internal Affairs Bureau ("IAB") resume

---

[1] Plaintiffs have filed a motion seeking leave to file an amended complaint adding a federal Monell claim against Defendant City of New York which has not yet been fully submitted or resolved.  See ECF Nos. 45-46.  The instant motion proceeds with the federal individual liability claims against Defendant Officers in Plaintiffs' operative pleading.  See ECF No. 25.

and Central Personnel Index ("CPI") (hereinafter "CCRB, IAB and CPI summaries" or "misconduct summaries").[2]  See ECF No. 34; ECF No. 37 at 1; see also ECF No. 28 ¶ 2.B (Confidentiality Order drafted by and stipulated to by the parties referencing the CCRB history, IAB resume and CPI).  As they pertain to each Defendant Officer, the CCRB, IAB and CPI summaries provide abbreviated information about misconduct complaints or matters in an officer's career-long personnel records.  See ECF No. 34 at 3 (Plaintiffs describing the summaries as "overarching picture"); ECF No. 37 at 1-2 (Defendants' discussion of CCRB, IAB and CPI summaries and settlement agreements).  The CCRB, IAB and CPI summaries may include investigation, discipline or litigation outcomes corresponding to a misconduct allegation, if any exist, but the summaries do not include the underlying files for the occurrences listed.  See id.  For the time being, Plaintiffs have only requested the CCRB, IAB and CPI summaries but not the underlying files corresponding to the entries contained therein.  See ECF No. 43 at 2; ECF No. 44 at 9.  The parties previously drafted and stipulated to handling the CCRB, IAB and CPI summaries' confidentially, and the Court entered a related Order.  See ECF Nos. 28-29.  In response, Defendants produced the CCRB, IAB and CPI summaries with various entries redacted.  See ECF No. 34.  According to Plaintiffs, these redactions cover roughly half of the CCRB, IAB and CPI summaries produced, and all are improper.  See ECF No. 44 at 5.

Plaintiffs move for an Order compelling Defendants to remove all redactions from the CCRB, IAB and CPI summaries and to produce clean copies.  See ECF No. 34.  Defendants

---

[2] The Court will use the term misconduct summaries throughout this Order although the parties at times say "disciplinary summaries."  See, e.g., ECF No. 34, 37, 42-43.  This is because the parties' papers and representations in connection with the instant motion make clear that the summaries include information about misconduct complaints that may give rise to related investigations, disciplinary proceedings, disciplinary action and/or litigation against the subject officer.  The phrase "misconduct summaries" clearly encompasses various stages of a misconduct matter.

opposed. See ECF No. 37. The Court heard the parties' arguments and granted leave for the parties to file supplemental submissions, see ECF No. 44, which the parties have done, see ECF Nos. 40, 42-43.

### III. Legal Standards

Under Rule 34, "a party may serve on any other party a request within the scope of Rule 26(b) . . . to produce . . . any designated documents[.]" Fed. R. Civ. P. 34(a)(1)(A). Rule 26(b)(1) provides that Plaintiffs "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).[3] "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

The party to whom the request is directed must timely comply with production of the responsive documents "or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

---

[3] Contrary to Defendants' argument, the 2015 Amendments to Rule 26(b) did not represent a fundamental change in the existing scope of discovery such that cases pre-dating 2015 would be inapposite. The Advisory Committee explained that the 2015 Amendment to Rule 26(b)(1) did not in this regard "change the existing responsibilities of the court and the parties to consider proportionality." Comm. on Rules of Practice and Procedure, Sept. 2014 Report to the Judicial Conference, at App'x B-39, available at https://www.uscourts.gov/sites/default/files/ fr_import/ ST09-2014.pdf.

4

Under Rule 37, a party who has not received a timely production of discovery responsive to a request may move for an order compelling a production if "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).  A party seeking discovery does not have a burden to address all Rule 26(b)(1) proportionality factors.

"[A] party seeking to avoid discovery on grounds of burden at least has the obligation to address those proportionality factors pertinent to that case and provide specific evidence and argument about them to the extent possible; it is not enough merely to invoke the word 'burden' as a talisman." Guadalupe v. City of New York, No. 15 Civ. 220 (CM) (JCF), 2016 WL 3570545, at *2 (S.D.N.Y. June 24, 2016); see In re Bloomfield Inv. Res. Corp., 315 F.R.D. 165, 168 (S.D.N.Y. 2016) (overruling burdensomeness objection where objecting party did not "present particularized evidence in their briefing that production of the . . . records would be unduly burdensome or costly, such as an affidavit of a person with knowledge of the record keeping system explaining in detail the basis of the objection").

### IV. The Contested Evidence In The CCRB, IAB And CPI Summaries Is Relevant To Plaintiffs' Action And Proportionate To The Case

#### a. Relevance

Courts have long interpreted Rule 26(b)(1)'s scope broadly with respect to relevance and discovery sought in connection with federal § 1983 civil rights claims.  See Bailey v. City of New York, No. 14 Civ. 2091 (JBW) (VMS), 2015 WL 4523196, at *3 (E.D.N.Y. July 27, 2015) ("The scope of discovery is particularly broad in a federal civil rights action."); Cox v. McClellan, 174 F.R.D. 32, 34 (W.D.N.Y. 1997); Inmates of Unit 14 v. Rebideau, 102 F.R.D. 122, 128 (N.D.N.Y. 1984).  Applying this standard to police personnel records, misconduct records are presumptively relevant and discoverable, particularly when underlying § 1983 claims are brought against officers in their individual capacities, that is, without an accompanying

5

Monell claim, as is the case here. See Fowler-Washington v. City of New York, No. 19 Civ. 6590 (KAM) (JO), 2020 WL 5893817, at *1 (E.D.N.Y. Oct. 5, 2020) (finding relevant and discoverable "all of the documents and materials in [defendants'] possession concerning the personnel records of the defendants including but not limited to CCRB records, IAB records, performances evaluations, records of disciplinary proceedings, [and] Chief of Department records").[4] At trial some courts have held misconduct records to be relevant evidence of pattern, intent and absence of mistake under Rule 404(b) of the Federal Rules of Evidence. See Fed. R. Evid. 404(b); Ismail v. Cohen, 899 F.2d 183, 188 (2d Cir. 1990) (affirming admission under Rule 404(b) of post-incident misconduct evidence that officer participated in a similar incident soon after the incident at issue); Vilkhu v. City of New York, No. 06 Civ. 2095 (CPS) (JO), 2009 WL 537495, at *2-5 (E.D.N.Y. Mar. 3, 2009) (denying new trial motion and finding proper the trial admission of officer defendants' prior similar misconduct admitted as Rule 404(b) pattern evidence bearing on disputed identity issue); Frails v. City of New York, 236 F.R.D. 116, 117 (E.D.N.Y. 2006) (finding evidence of prior acts of similar misconduct relevant because it "may be introduced at trial to prove intent" pursuant to Rule 404(b)).[5] Such police personnel records

---

[4] The Fowler-Washington Court dealt with more broadly defined police personnel records than Plaintiffs' request for misconduct summaries here. See id. The Court also notes that the federal claims in plaintiff's operative pleading in Fowler-Washington were against the defendant officers in their individual capacities and did not include a Monell claim. See Fowler-Washington, No. 19 Civ. 6590 (KAM) (JO), ECF No. 14 at 9-12.

[5] Because evidence must be relevant to be admissible, the Court's analysis cites cases admitting misconduct evidence. See Rubens v. Mason, 387 F.3d 183, 189 (2d Cir. 2004) ("Of course, to be admissible, evidence must be relevant[.]"). Defendants' citations to cases finding misconduct evidence inadmissible are inapposite. "Information within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); see King v. Conde, 121 F.R.D. 180, 194 (E.D.N.Y. 1988) ("Discovery is of broader scope than admissibility . . . and discovery may be had of inadmissible matters.").

are also presumptively relevant and discoverable for potential use under Rules 607 and 608(b) of the Federal Rules of Evidence. See Fed. R. Evid. 607; Fed. R. Evid. 608(b); Gross v. Lunduski, 304 F.R.D. 136, 147 (W.D.N.Y. 2014) (finding misconduct files subject to discovery where information could be used for permissible purposes including Rule 608(b) impeachment); Stephen v. Hanley, No. 03 Civ. 6226 (KAM) (LB), 2009 WL 1471180, at *14 (E.D.N.Y. May 21, 2009) (finding that if defendants deny being involved in similar misconduct to that at issue in lawsuit, misconduct information admissible under Rule 607 for impeachment); Lombardo v. Stone, No. 99 Civ. 4603 (SAS), 2002 WL 113913, at *8 (S.D.N.Y. Jan. 29, 2002) (allowing plaintiff to cross-examine defendant health aide regarding a lie told to a misconduct investigator shown in a disciplinary file).

Against this general backdrop, the Court overrules Defendants' arguments that the contested redactions in their CCRB, IAB and CPI misconduct summaries withhold irrelevant evidence for reasons similar to those relied on in other cases:[6]

- Courts have found misconduct complaints relevant where related investigations resulted in other findings including "exonerated" and "unfounded," or where the complaints have been withdrawn, abandoned or conciliated. See Bradley v. City of New York, No. 04 Civ. 8411 (RWS) (MHD), 2005 WL 2508253, at *2 (S.D.N.Y. Oct. 3, 2005) (finding that "courts have repeatedly directed production" of misconduct complaints, even when they were withdrawn); Reyes ex rel. Reyes v. City of New York, No. 00 Civ. 2300 (SHS), 2000 WL 1528239, at *2 (S.D.N.Y. Oct. 16, 2000) ("Although a CCRB finding that a complaint was 'unfounded' . . . may be relevant to an accusation's admissibility at trial, plaintiffs should be afforded the opportunity to review the file."); Unger v. Cohen, 125 F.R.D. 67, 70 (S.D.N.Y. 1989) (holding that "complaints that were abandoned or conciliated may not be admissible at trial, but that does not make them undiscoverable").

- Courts have found misconduct complaints relevant where they were made or underlying allegations occurred more than ten years prior to the contested incident. See Stephen, 2009 WL 1471180, at *14 (admitting more than ten-year-old misconduct records as Rule

---

[6] Defendants specifically argue that only substantiated or unsubstantiated complaints arising during the ten-year period preceding Plaintiffs' incident are relevant. They also argue that only "similar" misconduct is relevant, which they too narrowly describe as misconduct bearing the same title as or occurring in precisely the same context as Plaintiffs' claims.

7

404(b) pattern evidence, noting that although Rule 404(b) does not provide a date upon which prior bad acts become inadmissible, the evidence's age may diminish both their probative value as well as their prejudicial effect); Barrett v. City of New York, 237 F.R.D. 39, 40-41 (E.D.N.Y. 2006) (directing production of seventeen CCRB, four IAB and three CPI complaint records over a twenty-year period).

- Courts have found misconduct complaints relevant where they were made or underlying allegations occurred after the contested incident. See Ismail, 899 F.2d at 188-89 (upholding the use of post-incident Rule 404(b) evidence in support of the plaintiff's excessive force claim against a police officer); Benitez v. Lopez, 372 F. Supp. 3d 84, 88 (E.D.N.Y. 2018) ("Both CCRB and IAB records are . . . presumptively discoverable, regardless of the age . . . of the underlying complaint.") (quoting Fountain v. City of New York, No. 03 Civ. 7780 (RWS), 2004 WL 1474695, at *1 (S.D.N.Y. June 30, 2004)); Dobson v. Dougherty, No. 17 Civ. 1014 (LJV) (MJR), 2018 WL 6321390, at *6 (W.D.N.Y. Dec. 4, 2018) (finding that records pertaining to an event occurring after incident "potentially relevant as to [d]efendants' pattern, intent, lack of mistake or modus operandi with regard to their arrest of [plaintiff]"); Phillips v. City of New York, 277 F.R.D. 82, 84 (E.D.N.Y. 2011) (overruling defendants' objection to production of information concerning relevant, post-incident disciplinary history and directing its production); Barrett, 237 F.R.D. at 41 (finding that misconduct complaints that post-dated the action "could be relevant to [the] case and should be disclosed"); Wisniewski v. Claflin, No. 05 Civ. 4956 (JS) (ETB), 2007 WL 1120464, at *4 (E.D.N.Y. 2007) (holding that defendants' "assertion that complaints that post-date the current action at issue are not relevant is without merit"); Malsh v. N.Y.C. Police Dep't, No. 92 Civ. 2973 (KTD) (AJP), 1995 WL 217507, at *2 (S.D.N.Y. Apr. 11, 1995) (collecting cases); Montalvo v. Hutchinson, 837 F. Supp. 576, 581 (S.D.N.Y. 1993) ("Events after a disputed incident often shed light both on the intent of participants, and on . . . individual patterns of behavior.").

- Courts have found misconduct complaints relevant where their allegations are allegedly dissimilar to the ones made in the contested incident, finding that they "may influence an assessment of the credibility of [the] officers." See Bradley, 2005 WL 2508253, at *2 (finding that "virtually all" misconduct descriptions "are potentially relevant . . . either because of the similarity of the accusations to plaintiff's allegations here of wrongdoing or because they may influence an assessment of the credibility of these officers").

The Court overrules Defendants' objections to the discoverability of what they call dissimilar-incident misconduct, which fail to rebut the presumption that all of an officer's misconduct may be relevant and is discoverable. For example, Defendants challenge the relevance of excessive force complaints given that Plaintiffs do not allege that excessive force was used against them. See ECF No. 37 at 2-3; ECF No. 44 at 11-12. Among other things, the

8

Court finds that police misconduct complaints and their substantive review generally – and not merely whether they bear the same title as one of Plaintiffs' claims – are relevant to assessing a Defendant Officer's credibility and possible willingness to violate constitutional or departmental norms. In this regard the Court agrees with Plaintiffs that a non-exhaustive list of relevant misconduct includes: (1) complaints that Defendant Officers elsewhere intentionally or unreasonably stopped and searched vehicles without lawful cause is relevant to whether, here, they may have intentionally or unreasonably entered, searched and occupied Plaintiffs' home without lawful cause; (2) complaints that Defendant Officers intentionally or unreasonably turned off required body cameras during police operations that required them is relevant to Plaintiffs' allegations that Defendant Officers fabricated evidence against them affirmatively or by omission here; and (3) complaints that Defendant Officers gratuitously treated citizens with discourtesy or disrespect is relevant to whether, as Plaintiffs allege, disrespect manifested in Defendant Officers' unreasonably lengthy occupation of their home and detention of their persons beyond the time any purported probable cause dissipated. See ECF No. 43. Any concern over a particular misconduct matter's tenuous connection to Plaintiffs' claims is better litigated in the context of admissibility post-discovery. See Fowler-Washington, 2020 WL 5893817, at *3 (broadly finding "no doubt" that defendant officers' work and disciplinary history was relevant and discoverable, and stating that "[t]he extent to which such records will be admissible at trial is a question for another day"); Benitez, 372 F. Supp. 3d at 88-89 (overruling defendants' relevance objection to allegedly dissimilar misconduct, holding that "[g]iven that there is a limited identified universe of documents sought, this is really an objection to admissibility, not relevance").

9

In light of the foregoing, the Court finds that Defendants' contested redactions of misconduct complaints from the CCRB, IAB and CPI summaries must be removed so the relevant evidence is reviewable by Plaintiffs.[7]

### b. Proportionality

Defendants argue that their contested redactions are supported by proportionality considerations in discovery, e.g., the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit. See Fed. R. Civ. P. 26(b)(1). This Court disagrees. "The importance of the issues at stake in the action" is significant, as they involve civil rights. See Fed. R. Civ. P. 26(b)(1). "Although the amount in controversy has not yet been specifically determined, in light off the serious nature of the claims presented," the factor does not counsel against disclosure. See Black Love Resists in the Rust ex rel. Soto v. City of Buffalo, 334 F.R.D. 23, 31 (W.D.N.Y. 2019); see also Fed. R. Civ. P. 26(b)(1); Guadalupe, 2016 WL 3570545, at *2 ("[N]ot all of the proportionality factors may be relevant in any particular dispute, and they certainly will not each carry the same relative weight in every context."). Defendants' exclusive access to the information weighs in favor of discovery because it diminishes the availability and relevance of other proportionality considerations; Plaintiffs, regardless of their resources, cannot show the importance of the information in resolving the

---

[7] In so finding, the Court declines to rely on Defendants' argument that their proposed relevance parameters were adopted by the United States District Court for the Southern District of New York's Plan for Certain 1983 Cases Against the City of New York ("S.D.N.Y. Plan"). The S.D.N.Y. Plan was designed to expedite resolution of certain § 1983 actions through limited discovery and mediation. See Leslie v. City of New York, No. 12 Civ. 849 (KHF), 2012 WL 1744842, at *1 (S.D.N.Y. May 15, 2012). This District "has no comparable plan," and the S.D.N.Y. Plan does not control here. See id.

issues if they do not know what it is.  "In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so."  See Comm. on Rules of Practice and Procedure, supra, at App'x B-40-B-41 (pertaining to Rule 26(b)(1)'s 2015 Amendments) (describing the relative-access factor's application to case where an individual plaintiff is against a party with "vast amounts of information").

At the same time, Defendants have failed to show through evidence or argument that unredacting and re-producing the misconduct summaries would impose more than a negligible burden or expense.  See Guadalupe, 2016 WL 3570545, at *2 (noting that a party resisting discovery has the burden to address proportionality factors by providing specific evidence and argument).

Defendants cannot rely on a burden that they themselves created—the over-redaction of the records—to establish a factor in their favor in the proportionality analysis.

In light of the foregoing, the Court finds on this record that the requested discovery is relevant to Plaintiffs' federal civil rights claims against the Individual Officer Defendants and proportionate to the needs of the case.[8]

### V. Defendants Have Not Shown That The Contested Information Is Protected By Any Applicable Privilege

Defendants also invoke various privileges with respect to the contested redactions.  As the party invoking privilege, Defendants bear the burden of justifying its application.  See King v. Conde, 121 F.R.D. 180, 189 (E.D.N.Y. 1988).  For the reasons that follow, the Court finds that

---

[8] Although the Court finds the discovery relevant to Plaintiffs' federal individual liability claims against Defendant Officers as discussed, it also notes its potential relevance to Plaintiffs' allegation of negligent hiring, retention, training and supervision claims against the City Defendant under New York law.  See ECF No. 25 at 13-14.

11

Defendants have failed to show that the redactions are permissible under any of the privileges claimed.

### a. New York Civil Rights Law § 50-a Has Been Repealed, And Defendants Concede It Does Not Control The Court's Resolution Of The Instant Motion

Prior to its repeal on June 12, 2020, New York Civil Rights Law § 50-a provided in relevant part that "[a]ll personnel records used to evaluate [a police officer's] performance toward continued employment or promotion . . . shall be considered confidential[.]" N.Y. Civ. Rights L. § 50-a, repealed by L.2020, c. 96, § 1, eff. June 12, 2020. Also prior to § 50-a's repeal, the Corporation Counsel of the City of New York (Defendants' counsel here) argued that police officers' privacy interests previously protected by § 50-a were a factor to be considered in discovery disputes between federal civil rights litigants over police personnel information like the redacted information that is the subject of Plaintiffs' instant motion. See, e.g., Collado v. City of New York, 193 F. Supp. 3d 286, 290 (S.D.N.Y. 2016) (noting Corporation Counsel's allusion to § 50-a as basis for characterizing defendant officer's personnel records as confidential); Smalls v. Fallon, No. 92 Civ. 8191 (DLC) (BAL), 1995 WL 5847, at *13 (S.D.N.Y. Jan. 5, 1995) (noting Corporation Counsel's invocation of § 50-a as a basis for defendant officer's withheld personnel records).

With § 50-a's repeal, Plaintiffs argue that Defendants can no longer cite to that law to justify their redaction of the contested information from the CCRB, IAB and CPI summaries, particularly because § 50-a's repeal has arguably rendered information similar to what would appear on the full, unredacted CCRB, IAB and CPI summaries publicly available through Freedom of Information Law ("FOIL") requests. See ECF No. 34. On the same day of § 50-a's repeal, the CCRB's Chair issued a release stating that it "authorizes the CCRB to provide the public with information about officers in their own complaints as well as their disciplinary

12

records of other officers in their communities." See N.Y.C. Civilian Complaint Review Bd., CCRB Chair Fred Davie on 50-a Repeal (June 12, 2020), available at https://www1.nyc.gov/ assets/ccrb/ downloads/pdf/about_pdf/news/press-releases/2020/PR_CRL50a.pdf.  The CCRB produced an agency database of officer misconduct complaint information to the New York Civil Liberties Union ("NYCLU") in response to a related FOIL request made by that organization. See id., CCRB Chair Fred Davie: New Yorkers' Right to Transparency Through FOIL is Fundamental to Oversight (Aug. 20, 2020), available at https//www1.nyc.gov/assets/ ccrb/downloads/pdf/about_pdf/news/press-releases/2020/PR_Second%20Circuit_08202020.pdf. Litigation ensued and, in Uniformed Fire Officers Association v. De Blasio, 973 F.3d 41, 48-49 (2d Cir. 2020), the Second Circuit denied a preliminary injunction sought by police officer, firefighter and correction officer unions against the NYCLU's publication of the CCRB FOIL production of officer misconduct complaint information, including those that were the subject of open CCRB investigations.

In response to Plaintiffs' arguments about § 50-a's repeal, Defendants concede that § 50-a is not dispositive on the instant motion.  See ECF No. 37 at 2; ECF No. 44 at 3.  Instead, Defendants argue that the deliberative process and law enforcement privileges protect its contested redactions.  See ECF No. 37 at 2; ECF No. 44 at 3.

### b. Defendants Have Not Shown The Deliberative Process Privilege Or The Law Enforcement Privileges To Apply

In order to sustain an asserted privilege, "a party 'must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they may not rely simply on generalized reiterations of the policies underlying the privilege.'"  Coleman v. Cty. of Suffolk, 174 F. Supp. 3d 747, 756 (E.D.N.Y. 2016), aff'd, 685 F. App'x 69 (2d Cir. 2017); see King, 121 F.R.D. at 189 ("In order to assert a

13

claim of privilege against disclosure of police materials to a plaintiff raising federal civil rights claims against a police defendant, the officers or the police department must do more than alert the court to the [relevant privilege] or the generalized policies which support it.  The police must make a substantial threshold showing that there are specific harms likely to accrue from disclosure of specific materials[.]") (citation & internal quotation marks omitted).  "If such a showing is not made, the question is resolved in favor of direct disclosure." Id. at 190.

### i. Defendants Have Failed To Show That The Deliberative Process Privilege Applies

The qualified deliberative process privilege is sometimes called the executive privilege because it "protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions[,]" Hopkins v. U.S. Dep't of Hous. & Urban Dev., 929 F.2d 81, 84-85 (2d Cir. 1991), and it "covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which government decisions and policies are formulated." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).

Courts have held that the deliberative process privilege cannot extend to local law enforcement agency personnel decisions "without seriously thwarting the very purpose for which the privilege was created." Morrissey v. City of New York, 171 F.R.D. 85, 89 (S.D.N.Y. 1997); see Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York, 194 F.R.D. 88, 95 (S.D.N.Y. 2000) (citing Mercado v. Div. of N.Y.State Police, 989 F. Supp. 521, 532 n.1 (S.D.N.Y. 1998)); see Velez v. City of New York, No. 04 Civ. 1776 (ENV) (MDG), 2010 WL 2265443, at *3-4 (E.D.N.Y. June 2, 2010); Perez, 194 F.R.D. at 95.  "Such decisions are simply not the type of important public policies whose creation the privilege was designed to protect." Morrissey, 171 F.R.D. at 89; see Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 80 (2d Cir. 2002)

14

(holding that documents qualifying for the deliberative process privilege must have been "prepared to assist [agency] decisionmaking on a specific issue," and not as part of the agency's routine processes); Charles v. City of New York, No. 11 Civ. 980 (KAM) (JO), 2011 WL 5838478, at *2 (E.D.N.Y. Nov. 18, 2011) ("Routine operating decisions cannot be transformed into policy formulation at the higher levels of government simply because they are made at public institutions.") (quoting Torres v. City Univ. of N.Y., No. 90 Civ. 2278 (CSH), 1992 WL 380561, at *7 (S.D.N.Y. Dec. 3, 1992)).  Courts have found that the deliberative process privilege does not preclude the disclosure of documents concerning CCRB, IAB or like investigations into discrete misconduct events in civil rights suits.  See Charles, 2011 WL 5838478, at *2; Davis v. City of New York, No. 10 Civ. 699 (SAS), 2011 WL 1742748, at *6 (S.D.N.Y. May 5, 2011) (finding CCRB-complaint deliberations unprotected by deliberative process privilege).

In order for the deliberative privilege to attach the asserting party must show, among other elements, that the information at issue is predecisional and deliberative in nature, and not merely factual.  See Hopkins, 929 F.2d at 84; see also Tigue, 312 F.3d at 76.  Factual material is not protected by the deliberative process privilege and, where discovery contains some combination of predecisional or deliberative information alongside factual material, "any factual recitations that can be disentangled from deliberative analyses must be released."  Davis, 2011 WL 1742748, at *4.  Here, Defendants do not show that the redacted material in the CCRB, IAB and CPI summaries contain anything beyond factual recitations about the misconduct complaints compiled therein.  See id at *5 (finding no deliberative process privilege in police misconduct records and noting that the City incorrectly believed that the privilege was established "by using the word 'deliberation'"); E.B. v. N.Y.C. Bd. of Educ., 233 F.R.D. 289, 292 (E.D.N.Y. 2005)

("[E]xplaining or interpreting an existing policy or measuring compliance with existing procedures is not predecisional, and thus is not privileged.").

The deliberative process privilege is a qualified one, meaning that when it applies, courts should "balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." Kuntsler v. City of New York, 439 F. Supp. 2d 327, 328 (S.D.N.Y. 2006) (citations & quotations omitted). "[T]he party asserting the privilege must make a threshold showing that the privilege attaches before the court is required to balance the parties' interests." City of New York v. Beretta U.S.A. Corp., 222 F.R.D. 51, 66 (E.D.N.Y. 2004) (citations & quotations omitted). Here, given that Defendants have not made a threshold showing that the deliberative process privilege attaches to the disputed redactions, the Court does not reach balancing.

### ii. Defendants Have Failed To Show That The Law Enforcement Privilege Applies

The focus of information protected by the qualified law enforcement privilege is "not on privacy concerns, but on the ability of the police department to conduct effective law enforcement, presently and in the future." Morrisey, 171 F.R.D. at 90-91. It asks whether present or future investigations "would be jeopardized if the information were revealed," id., and may include "(1) information pertaining to law enforcement techniques and procedures; (2) information that undermines the confidentiality of sources; (3) information that would endanger witnesses and law enforcement personnel; (4) information that would undermine the privacy of individuals involved in an investigation; or (5) information that would seriously impair the ability of law enforcement agencies to conduct future investigations," Dorsett v. Cnty. of Nassau, 762 F. Supp. 2d 500, 520 (E.D.N.Y. 2011) (citing In re City of New York, 607 F.3d 923, 944-45 (2d Cir. 2010)). Defendants' invocation of the privilege is not on point. The law

16

enforcement privilege is designed to protect law enforcement's ability to do certain investigative work, not to protect investigations of law enforcement officers who allegedly failed to perform their duties properly.  The privilege protects police investigations' confidentiality in order to allow the police to protect the public, not to protect the police from the public's ability to scrutinize their misconduct history.

Defendants fail to show that any investigative techniques would be revealed by disclosure of the contested redactions as is required for the law enforcement privilege to apply, let alone specialized ones that would seriously impair their current or future use by law enforcement. Compare Coleman, 174 F. Supp. 3d at 756-57 (law enforcement privilege cannot be established by merely restating type of information the privilege is meant to protect without "a clear and specific evidentiary showing" of the harm that would result if specifically contested discovery were disclosed); and Barrett, 237 F.R.D. at 42 (denying law enforcement privilege where defendants "broadly assert[ed] that disclosure of any unresolved CCRB complaints [would] impede any ongoing investigations of these complaints" and "fail[ed] to specifically identify any potential harm that may result from the disclosure"), with Perez, 194 F.R.D. at 93-94 (applying the law enforcement privilege to information about a specialized police unit's programs and initiatives, finding that disclosure would reveal and undermine strategies).  Defendants have not shown how disclosing the information would endanger the safety of or compromise the privacy of complainants, sources or law enforcement personnel involved.  See Collado, 193 F. Supp. 3d at 291 (denying law enforcement privilege where there was no showing that reference to an officer's undercover status would jeopardize any ongoing operations or compromise any law enforcement methods or sources); Young v. City of New York, No. 10 Civ. 1701 (RMB) (THK), 2010 WL 3938372, at *2 (S.D.N.Y. Oct. 7, 2010) (finding withholding of CCRB and IAB files

based on complainants' privacy improper because those who "lodge complaints against police official have voluntarily placed their arrests in issue, and seek to vindicate an interest that goes beyond their acquittal of criminal charges, notwithstanding the sacrifice of their privacy rights").

As a result, Defendants have not met their burden in demonstrating that the law enforcement privilege attaches to the information in the contested redactions, and the Court need not balance the parties' relative interests because no disclosure harm is shown.  See Beretta U.S.A. Corp., 222 F.R.D. at 66.

### VI. Certain Limited Redactions

The Court notes that courts have allowed the redaction of limited private police officer information from disclosure in discovery, for example, officer social security numbers, home addresses and family member names.  See Fowler-Washington, 2020 WL 5893817, at *5; Collens v. City of New York, 222 F.R.D. 249, 254 (S.D.N.Y. 2004).  Although Defendants do not argue that highly personal and sensitive information in this regard is at issue, such redactions are permitted.  See Barrett, 237 F.R.D. at 42 n.1.

### VII. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' motion to compel and orders Defendants to produce the unredacted (except for officers' private personal information) CCRB, IAB and CPI summaries within fourteen days of this Order.

Dated:  Brooklyn, New York
            November 24, 2020

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge